UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

|  |  |  |
|---|---|---|
| SERGEY BONDARENKO | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 07-3753 (PGS) |
| | : | |
| v. | : | |
| | : | |
| HACKENSACK UNIVERSITY MEDICAL CENTER | : | **OPINION AND ORDER** |
| | : | |
| Defendant. | : | |

# INTRODUCTION

Presently before this Court is a renewed application by Plaintiff Sergey Bondarenko ("Plaintiff") for appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1). For the reasons set forth below, Plaintiff's application is **DENIED**.

# BACKGROUND

On August 9, 2007 Plaintiff submitted a Complaint, brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") alleging that Hackensack University Medical Center ("Defendant") discriminated against him because of his national origin as a Russian immigrant. Specifically, Plaintiff alleges that since he was hired as a security officer in 2002 he has applied for several promotions and all of them have been denied. Further, he alleges that he has the requisite qualifications to fill the positions for which he applied but was denied advancement because of his national origin and lack of connections to Defendant's human resources department. On February 4, 2008, Plaintiff filed an application for the appointment of *pro bono*

counsel. (Docket Entry No. 8-4.)  The undersigned denied that application in an Opinion and Order dated May 28, 2009.  (Docket Entry No. 11.)

Plaintiff filed his renewed application for pro bono counsel on January 19, 2009, arguing that circumstances have changed warranting a reexamination of his application.  Specifically, Plaintiff alleges that he is currently under the care of a psychiatric specialist and has been diagnosed as suffering from depressed mood, insomnia, and decrease in concentration.  Further, as of the time of the renewed application, he has been on medical leave from his job and is not presently receiving any pay.  The undersigned previously advised Plaintiff at a March 12, 2009 conference that his renewed request would likely be denied.

## DISCUSSION

**A.**     **Legal Standard**

A civil litigant does not enjoy a constitutional or statutory right to appointed counsel. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (*citing Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997)).  However, district courts retain statutory authority to request the appointment of *pro bono* counsel for indigent civil litigants.  28 U.S.C. § 1915(e)(1).  While Congress has empowered district courts to "request" counsel for civil litigants however, courts cannot force an unwilling attorney to serve as counsel.  *Id*. (*citing* 28 U.S.C. § 1915(e)(1)); *see also Christy v. Robinson*, 216 F.Supp.2d 398, 406, n. 16 (D.N.J. 2002) (*citing Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 301 (1989)).  Finally, the decision to appoint counsel may be made at any point in the litigation and may be made by a district court *sua sponte*.  *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993).

When exercising its discretion under § 1915, this Court must follow the analytical framework set forth in a trilogy of Third Circuit decisions. *Tabron*, 6 F.3d at 156; *Parham v. Johnson*, 126 F.3d 454 (3d Cir. 1997); *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). This framework begins with a threshold assessment of the merit of the claimant's case. *Montgomery*, 294 F.3d at 499. After finding "some arguable merit in fact and law," district courts in the Third Circuit must weigh several *Tabron* post-threshold factors. *Id*. at 500. These factors – designed to ensure that courts do not appoint counsel in frivolous cases – include: 1) the plaintiff's ability to present his case; 2) the difficulty of the particular legal issues; 3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue an investigation; 4) the extent to which a case is likely to turn on credibility determinations; 5) whether the case will require testimony from expert witnesses; and 6) the plaintiff's capacity to retain counsel on his own behalf. *Id*. (*citing Tabron*, 6 F.3d at 155-57); *see also Parham*, 126 F.3d at 461 ("The *Tabron* factors will ensure that courts do not appoint counsel to frivolous cases.").

When weighing the *Tabron* post-threshold factors, district courts must remain mindful of certain considerations. First, the list is not exhaustive. *Montgomery*, 294 F.3d at 494 (internal citations omitted) ("this list of factors is not exhaustive, but should serve as a guidepost for the district courts"). Next, "where a plaintiff's case appears to have merit and most of the aforementioned factors have been met, courts should make every attempt to obtain counsel." *Parham*, 126 F.3d at 461. Third, district courts "should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Montgomery*, 294 F.3d at 499 (*citing Parham*, 126 F.3d at 458).

### B. Application of the *Tabron* Factors

#### 1. Threshold Analysis of Merit in Fact and Law

At the outset, this Court must assess whether Plaintiff's claim – brought pursuant to Title VII of the Civil Rights Act of 1964 – has "some arguable merit in fact and law." *Tabron*, 6 F.3d at 155. This Court has already held that this requirement has been satisfied. (Docket Entry No. 11.)

The Court, therefore, proceeds to the *Tabron* post-threshold analysis.

#### 2. Application of the *Tabron* post-threshold factors

##### (i) Plaintiff's ability to present his own case

A plaintiff's ability to present his or her own case is the most significant factor of the *Tabron* post-threshold factors. *Montgomery*, 294 F.3d at 501. Various factors play a role in this analysis, including the plaintiff's education, literacy, prior work experience, and prior litigation experience, along with a plaintiff's ability to understand English. *Id.* Additionally, courts should examine whether plaintiff has access to "necessary resources like a typewriter, photocopier, telephone, and computer." *Parham*, 126 F.3d at 459.

Plaintiff has the equivalent of a Master's degree in Mechanical Engineering from a Russian university. Plaintiff speaks both Russian and English, but his first language is Russian. Despite the language barrier and barring some minor spelling errors, Plaintiff has done an adequate job presenting his initial case to the Court and his adversaries. Plaintiff has properly filed his Complaint and has prepared Interrogatories. Further, almost all of Plaintiff's submissions to date have all been typed.

The only thing that has changed since Plaintiff's first application is that Plaintiff is now being treated for depression, a condition which he believes will impair his ability to effectively present his case. Plaintiff appeared before the Court for a status conference on March 12, 2009. At that time, he appeared to be coherent and responded to the Court's inquiries effectively. Further, he complied with the Court's directions to amend his discovery requests. (Docket Entry No. 22.)

Although Plaintiff has had some difficultly obtaining discovery, it is not entirely apparent that these difficulties are related to his lack of counsel. (Docket Entry No. 23.) It is the unfortunate truth that parties to litigation cannot always agree as to what information should be produced and when. Pursuant to this Court's March 23, 2009 Order, Defendant had until May 4, 2009 to respond to Plaintiff's discovery requests, therefore rendering Plaintiff's April 8, 2009 letter premature. (Docket Entry No. 21.) Further, this Court recently granted Defendant's request to extend certain discovery deadlines. (Docket Entry No. 26.) Pursuant to that Order, responses to interrogatories were due on May 26, 2009, and responses to document demands were due on June 1, 2009. (Docket Entry No. 27.) These dates were further extending by the Court at a June 5, 2009 status conference pending the entry of a Discovery Confidentiality Order. (Docket Entry No. 31.)

Plaintiff moreover laments that his adversary is allegedly trying to take advantage of him because he is representing himself and he is unfamiliar with the legal system in this country. Specifically, Plaintiff points to an August 15, 2008 letter sent to him by then defense counsel Jennifer C. Van Syckle, which Plaintiff believed to be threatening and aggressive. While the Court takes such allegations very seriously, it has since obtained a copy of the offending letter.

Upon examination, the Court notes that the correspondence is a Rule 11 letter, a device commonly used by attorneys who believe a suit has little to no merit. Such a letter does not amount to an attempt to take advantage of Plaintiff.

Seeing as Plaintiff has access to a typewriter or computer, has a high level of education and has thus far managed to navigate the legal system despite his current medical condition, this first factor weighs against the appointment of *pro bono* counsel.

### (ii) The complexity of the legal issues

To assess the complexity of legal issues for purposes of appointing counsel, "courts must still look to the proof going towards the ultimate issue and the discovery issues involved." *Id.* The Third Circuit has stated that "where the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." *Tabron*, 6 F.3d at 156 (internal citations omitted). In the instant case, plaintiff's factual claims are easy to understand, and the legal issues involved are straightforward. Thus, this factor weighs against appointment of counsel.

### (iii) The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation

The third *Tabron* post-threshold factor considers whether the plaintiff will be able to conduct factual investigations using the discovery tools available under the Federal Rules of Civil Procedure. *Montgomery*, 294 F.3d at 503. Generally, district courts give weight to an incarcerated individual whose confinement limits his ability to conduct discovery and investigate facts. *Montgomery*, 249 F.3d at 253. That situation is not present here, and in fact, Plaintiff has

already submitted several documents in support of his claim.  (Docket Entry No. 8-1).  Nothing in the record indicates that Plaintiff is unable to conduct discovery, nor that a tremendous amount of discovery is necessary to maintain this litigation.  Thus, this factor does not weigh in favor of the appointment of counsel.

### (iv) The amount a case is likely to turn on credibility determinations

District courts should find this *Tabron* post-threshold factor in favor of appointment of counsel where the case will become a "swearing contest."  *Parham*, 126 F.3d at 460 ("[W]hen considering this factor, courts should determine whether the case was solely a swearing contest.")  Based on the initial pleadings, this case has some elements of a swearing contest.  Plaintiff claims that Defendant discriminated against him when they did not promote him, while Defendant claims that the lack of promotions were due to legitimate non-discriminatory reasons.  This factor, therefore, weighs slightly in favor of appointment of counsel.

### (v) Whether the case will require the testimony of expert witnesses

The Court may appoint counsel when the case will require expert testimony.  *Montgomery*, 294 F.3d at 503.  There is no indication that this case will require any expert testimony and accordingly this factor does not weigh in favor of the appointment of counsel.

### (vi) Whether the plaintiff can attain and afford counsel on his own behalf

Before appointing counsel the court should consider whether an indigent plaintiff could retain counsel on his or her own behalf.  If counsel is easily attainable and affordable by the claimant, but they have made no effort to retain an attorney, then counsel should not be appointed by the court.  In the instant case, Plaintiff has not applied to proceed *in forma pauperis*.  His

motion to appoint counsel, however, does indicate that he cannot afford to retain counsel.

In his prior application, Plaintiff has indicated the following unsuccessful efforts to obtain counsel include: 1) contacting the Bergen County Bar Association who referred two attorneys that were not interested in proceeding with the case; 2) contacting the Equal Employment Opportunity Commission for "an affordable legal advisor"; and 3) contacting several attorneys on his own who did not want to take the case.  Thus, Plaintiff has certainly made efforts to retain counsel on his own behalf.  This factor, therefore, counsels in favor of appointment of counsel.

## CONCLUSION

A balancing of the factors set forth above weighs against granting Plaintiff's application for *pro bono* counsel.  Only the fact that credibility determinations may be involved and the fact that Plaintiff has attempted to find counsel weigh in favor of granting the application.  Considering, however, Plaintiff's ability to present his claims, the relative lack of factual and legal complexity to his claims, and the fact that he can conduct his own factual investigation into the merits of his case, Plaintiff's application for the appointment of *pro bono* counsel is **DENIED.**

**SO ORDERED**.

*s/ Esther Salas*
**Esther Salas**
**UNITED STATES MAGISTRATE JUDGE**